VALENTINE DEWEIN
v.
THE CITY OF PEORIA.

*Municipal Corporations—Street Improvements—Drainage—Percolation of Water—Action for Damages.*

1. In an action against a municipal corporation to recover damages to the premises of the plaintiff alleged to have resulted from the percolation of water from a trench dug in the street for a water pipe and filled up with soft, porous and spongy material without any sufficient outlet for the water accumulating therein, it is *held*: That the plaintiff was not injured by the errors, if any, of the court below in giving instructions or touching the admission of evidence; that the evidence does not sustain the alleged cause of action; that evidence that there was more water in the plaintiff's cellar and premises after than before the completion of the improvement, was but slight proof and was entirely overcome by other evidence.

2. It *seems* that a municipal corporation is not liable for damages for supposed injuries where it has dug a ditch in a street and filled it with the same soil, although the soil therein is somewhat more porous than before.

[Opinion filed December 9, 1887.]

APPEAL from the Circuit Court of Peoria County; the Hon. T. M. SHAW, Judge, presiding.

The appellant was the owner of block 1 in Armstrong's Addition to Peoria, which he divided into four lots and at and before the time of the alleged injury to the same by the means hereafter mentioned, owned and occupied the same.

He had built a residence on lot 4 (the northeast quarter of the block), costing some $15,000. Appellant's premises are bounded by the Knoxville road on the east, Lynn Street on the west, Armstrong Avenue on the north and Chambers Avenue on the south. There was a deep ravine cutting appellant's premises from the northwest corner to the southeast corner, leaving the house on the northeast side of it. This ravine in a somewhat flattened shape extends from the northwest corner of appellant's premises diagonally across Armstrong

Avenue and extended up toward the bluff into the block lying immediately west and north of appellant's block, past the house known as Odell's, for some distance.

This ravine was originally fifteen or more feet deep where it ran through appellant's block.   At the place where the appellant built his house there was a little knoll projecting from the main bluff from which the water drained in a southerly direction.

Jacob Guyer had a residence just opposite appellant's on the block just north across Armstrong Avenue, though being thirty to fifty feet further east and fronting south on said last named avenue.

Prior to the time appellee graded Armstrong Avenue, in 1883, the water on Armstrong Avenue between appellant's premises and Guyer's, and also from appellant's premises, ran toward the Knoxville road.   The ground sloped toward the city. The Knoxville road runs directly north to the bluff about two blocks from appellant's southeast corner and has quite a steep grade rising toward the north about thirty-four feet.   From the Knoxville road to Lynn Street on Armstrong Avenue, one block directly west, the ascent is some three and one-half feet, and from Lynn on the same avenue to Bigelow St eet, one block further west, the ascent is still more rapid till the summit of the bluff is reached, a short distance further west.   Running in a meandering line from the intersection of Bigelow Street and Armstrong Avenue to a point a little to the north of the intersection of the Knoxville road and Pennsylvania Avenue, would represent the summit of the bluff.

The drainage from the summit of the bluff south was in a general southeasterly direction over the blocks that Guyer and Odell were on, to the appellant's block and across over that. Considerable of the water coming from east of Bigelow Street and west of the ravine across appellant's lot drained down through that ravine.

In the fall of 1883 appellee graded Armstrong Avenue all the way going east from North Street up to the west side of the Knoxville road.   This improvement required the excavation of the earth from eighteen to twenty-two inches in Arm-

strong Avenue, the replacing it with eighteen inches in the center and twelve inches at the sides and the setting of curb stones, the upper edge of which was to be ten inches above the gravel at Lynn Street; they were of the same height on the upper and lower side of Armstrong Avenue. That at the lower side extended along the depression at appellant's northwest corner. The curb stone was set twenty feet from the line of the lot and the space between appellant's lot and the curb stone was filled up with earth at appellant's request. A part of the earth taken from the street was used by him to fill up to the grade of the sidewalk. A portion of this sidewalk next the curb was used as a grass plat.

At the Knoxville road the curb on the upper side of Armstrong Avenue is one foot and six inches higher than the lower side, giving a fall of two feet on the upper side and three feet six inches on the lower side, between Lynn Street and the Knoxville road. The curb stones and the graveling are well laid and the street is in good condition to outward appearances at least. After the excavation of this earth in Armstrong Avenue, winter came on and stopped the work before the gravel was filled in, and considerable water gathered therein and laid there all winter, but this is not the injury complained of, as the street was completed before any damage was shown to have been done by it.

The damages complained of and for which recovery is sought in the declaration, resulted from the causes now to be mentioned. As a part of the improvements made, appellee laid a water pipe on Armstrong Avenue all the way from North Street to the Knoxville road, a distance of three blocks. The trench dug for the water pipe was some five feet deep and two feet wide, the water pipe was laid at the bottom, and the ditch was then again filled with the same dirt taken out of it, and the gravel put over it and the street rolled.

The declaration avers that the ditch was filled up with soft, porous earth and thereby changed the drainage along the course of the said drain so filled up, of water below the surface of the ground, from its natural course; that by the reason thereof, the water falling in time of rain or collecting from

melting snows and ice upon higher lands north and west of the premises of the appellant and upon said street, so in possession and under the control of appellee, were caused to flow over and percolate through the ground out of their natural course in and upon and along Lynn Street and in and upon Armstrong Avenue and in and along said ditch or trench so filled up with soft porous and spongy material, and without any sufficient outlet for the water collecting therein, and thereby the said waters were caused to collect, stand and accumulate in, upon and beneath the surface of the ground along the said Armstrong Avenue where the same runs along Lynn Street and the Knoxville road and opposite the premises of the appellant, and that the same were caused to flow over and percolate the soil and clay etc., of the plaintiff, in and upon his premises, and to enter and fill the cellars and boiler room of his dwelling house and to saturate the brick walls and to soak into the siding, floors and woodwork of the same, etc., and to crush in the walls of his cistern, etc., and rendered the appellant's lands swampy, etc., and injured his buildings and rendered the house unfit for use. The appellant declares for damages in a large sum.

The cause was tried by a jury and resulted in a verdict for the appellee and judgment rendered against the appellant for costs, from which this appeal is taken.

Attached is a substantial drawing of the appellant's premises and all the surroundings, which will make it easier to understand the situation of affairs.

Messrs. McCulloch & McCulloch, for appellant.

Appellee, in the improvement of its streets, is, in respect to the control of surface water, to be governed by the same rules as are private persons. Nevins v. City of Peoria, 41 Ill. 502; Rigney v. Chicago, 102 Ill. 64; Aurora v. Gillett, 56 Ill. 132; Aurora v. Reed, 57 Ill. 29; Gillison v. Charleston, 16 W. Va. 303; Inman v. Tripp, 11 R. I. 520; O'Brien v. St. Paul, 25 Minn. 331.

Surface water is that which falls upon the ground in times of rain, or which accumulates from melting snow and ice, whether the same lies upon or flows over the surface or percolates through it, and so continues to be surface water until it has reached some defined channel. Wheatley v. Baugh, 25 Pa. St. 528; Haldeman v. Bruckheart, 45 Pa. St. 514; Cooper v. Barber, 3 Taunt. 99; Broadbent v. Ramsbotham, 11 Exch. 602; Rawson v. Taylor, 11 Exch. 369; Livingston v. McDonald, 21 Iowa, 160; Chatfield v. Wilson, 28 Vt. 49.

The liability is the same when it causes injury by the division of surface water as it would if it diverted a running stream and caused it to flow upon appellant's premises. Peck v. Herrington, 109 Ill. 611; Pixley v. Clark, 35 N. Y. 520; Gillham v. Madison Co. R. R. Co., 49 Ill. 484; Gormly v. Sanford, 52 Ill. 158.

The owner of the dominant heritage can not impose upon a servient any burden which the latter was not obliged by nature to bear. Hicks v. Silliman, 93 Ill. 255; Peck v. Herrington, 109 Ill. 611; Mellor v. Pilgrim, 3 Ill. App. 476; Same v. Same, 7 Ill. App. 306; Pixley v. Clark, 35 N. Y. 520.

Messrs. I. C. Pinckney and H. W. Wells, for appellee.

No action lies against the owner for interfering with or destroying, percolating or circulating water under the earth's surface. Pixley v. Clark, 35 N. Y. 527; Acton v. Blundell, 12 Mees. & Wels. 324.

An owner may dig upon or cultivate his own land at pleasure though he cut off or open water, circulating or dead, under the earth, to his neighbor's injury. Such water is not different from the earth itself. He owns it. He does not own the

water of a surface stream, and can not set it back to another's injury without liability.    Pixley v. Clark, 35 N. Y. 531.

It is a well recognized principle that when a thing not *malum in se* is authorized to be done by a valid act of the Legislature and is performed with due skill and care in strict conformity to the provisions of the act, its performance can not, by the common law, be made a ground of action, however much one may be injured by it.    Rigney v. Chicago, 102 Ill. 64.

. We submit the city had an unquestioned right to improve the street as it did.    The improvement was a public work of great utility and the work was done in a most skillful manner. Such being the case we submit the city can not, under the authority last cited, be liable for such consequences, which could not have been anticipated when the work was done.

LACEY, J. The grounds upon which appellant seeks a reversal in this case are that the court below gave improper instructions for appellee and admitted improper evidence on the part of appellee and refused to allow certain evidence on the part of appellant.

We have examined the evidence in the case with much care and have come to the conclusion that there is such a lack of evidence on the part of appellant that the jury ought not to have found in his favor under any state of instructions and without reference to the request of appellant to the City Council to put in the sewer complained of.    The main burden of the appellant's proof goes to show that there was more water in his cellar and premises after the completion of the grading of the street and the putting in the water pipe than there had been before, and the jury was asked to infer from this fact that the putting in the water pipe by appellee was the cause of the trouble.

This kind of evidence at best is only slight proof, but when we come to consider the other evidence in the case, that all or nearly all the other property that laid west and north and higher than the surface of the street along and north of appellant's residence was similarly affected by water with his, even the force of that evidence is destroyed.

It seems that the soil along the side of the bluff in the neighborhood was of such a nature that in times of excessive rainfall it would fill with water and fill the cisterns and cellars in that neighborhood notwithstanding the great fall there was to the south.

To such an extent did this take place that cisterns would be broken in by the great pressure and the weight of the water gathered around them and cellars would be filled. Of course water was all the time making its way down grade and the lower it went the more water would accumulate.

Mr. Guyer, a witness introduced by the appellant, shows that the soil on each side is common clay and was full of water. He says: "On one part of my lot I dug a cess pool and found water four feet from the surface." Four feet would not be as low as the surface of the street, saying nothing about the water-pipe ditch. "I had water in my cellar before the improvements were made but not so much as since." "The bottom of my cellar is two or three feet higher than the surface of the street. Dewein's place is a little lower than mine. From the Knoxville road on that high land clear over to Elizabeth Street there is a great deal of water in the ground and a good many cellars and cisterns have water in them; cisterns have been broken in with the surface water and privy vaults have been filled by surface water. My cistern that was broken was full. The surface water was then ten feet above the level of the street." The theory is advanced that the water rose from below in the ditch into Guyer's cellar by means of the law of capillary attraction. Such a theory as that is wholly inadmissible. His cellar was over ninety feet from the place where the water pipe was buried and there are no known laws of nature that would justify the belief in such result. The street in front of appellant's house had a good fall to the east to the Knoxville road, and had a good level grade to that road, and does not appear to have been overflowed by water on the surface and none could possibly reach appellant's premises from the surface on account of the intervening curb stone. Appellant's house was ninety feet from the water-pipe ditch and evidently water percolated

through the intervening clay if it reached there from the street at all, which it is likely it did.

The tests showed that the street beneath the gravel was full of water as well as the intervening clay soil between it and plaintiff's house, and all on about the same level. But other tests showed that in the water pipe ditch, at the Knoxville road, it was much lower. This shows that water did not run down along the water pipe very readily at that point, otherwise the water would have been as high at that point as above, barring the descent in the grade.

It is more than likely that the filling up of the ravine west of appellant's house, which he did very considerably, had a tendency to cause water to accumulate in his cellar. The ravine was sixteen feet deep, and would have a strong tendency to draw the water out of appellant's lot for a considerable distance back toward his house, and perhaps drain it below the bottom of his cellar, and that may account for his cellar being dry theretofore.

But when the ravine is filled up to the extent it was, it no doubt stopped the heavy drainage that it had before. The water did not appear in appellant's cellar till 1885, a year after this water pipe was put in. The substance of the appellant's complaint is that appellee, in making the needed improvements along the street, necessarily loosened up the soil in its excavation by first digging it out and then restoring it, and made it a little easier for water to pass through it, and in consequence he has been damaged.

We are of the opinion that the appellant has no remedy for such an injury as that. There has been no ditch left open; no drain has been cut. The cases of Livingston v. McDonald, 21 Ia. 160, and Mellor v. Pilgrim, 3 Ill. App. 476, in their facts, are not like those in this case. In each of these cases water had been collected by means of tile drains and flowed onto the lands of the plaintiff by that means. But suppose a ditch had once been dug and then filled up with the same soil, would the law notice any claim for damages for supposed injuries resulting from the fact that the soil, in the excavated and filled-up ditch, was a little more porous than before and allowed a little more water to percolate through it?

Public policy and the good of society would preclude such rule. The rule announced in the two cases above, we understand to have been considerably modified by the case of Peck v. Herrington, 109 Ill. 611, the principles announced in which, if carried out to legitimate inference, would prevent recovery in this case. It will not be necessary to notice the other point in regard to appellee showing that appellant requested and promoted the laying of the water-pipe, damages to recover for which act he now sues.

The evidence, we think, would not justify a jury in rendering a verdict in favor of appellant. The instructions given for the appellee, as applied to the evidence in the case, were not erroneous. The judgment is therefore affirmed.

*Judgment affirmed.*